The Mayor and City Council of Baltimore vs.
Lewis Raymo.

*City improvement—Contract—Time not of its Essence—
Ordinance authorizing Repavement of Street—Patent pro-
cess—Repugnancy—Assessment of Tax to pay for Im-
provement.*

Where in a contract for the re-paving of a street, it is stipulated that
the work shall be completed by a specified time, a failure to begin
and complete the work within the time stipulated, will not, after
the work has been completed by the contractor, and accepted and
paid for by the city, render the contract a nullity from the beginning,
and invalidate the tax assessed to pay for the work, there being no
words in the contract indicating that time was of its essence, or that a
non-observance of that particular provision was designed, of itself,
to terminate the liability of the city.

A city ordinance provided that a certain street should be repaved
with " Camp's patent process of Belgian block pavement." The
patent provided that the bed of the street should be rolled at right
angles to the curbing, varying from an angle of forty-five degrees to
a right angle, before the stones were laid. The contract provided
that it might be either rammed or rolled. The patent provided
that the stones, when laid, should be placed diagonally or obliquely
to the road-bed. The contract provided that they should be laid
at right angles to the road-bed. The patent provided that the
blocks, when laid, should be rolled with a heavy steam-roller, that
they might be firmly compacted together. The contract provided
that each block should be rammed separately with a hand rammer.
The patent provided that the joints between the stones should be
filled with asphalt or other elastic filling, whereby the pavement
should be rendered waterproof. The contract provided that the
blocks, when laid, should be covered with three inches of sand
tamped into the joints. Held:

That there was no repugnancy between the contract and the ordinance.

Matters of detail in repaving a street under a patent process, not
material or substantial variations or departures from the patent,
will not render the tax levied to pay for the work illegal and void.

It is no defence to an assessment for a public improvement completed and accepted, that the contractors did not perform the contract for the work strictly according to its terms.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, BRYAN, and MCSHERRY, J.

*Robert Gilmor,* and *Bernard Carter,* for the appellant.

*N. P. Bond,* for the appellee.

. The contract in the case at bar was void *ab initio.* The Ordinance directs the re-paving to be done with "Camp's Patent Process of Belgian Block Pavement." The City Commissioner had no power to contract for doing it in any other manner, and any contract made by him for doing it otherwise than as the Ordinance directs, is *ultra vires* and void. · *Mayor, &c., of Baltimore vs. Reynolds,* 20 *Md.,* 1. ·

The contract made by the City Commissioner in this case, required the work to be done in a manner not only not in accordance with Camp's Patent Process of Belgian Block Pavement, but diametrically contrary to it.

It is no answer to say that what was contracted for was just as good, or even better, than what the patent called for, and the Ordinance required. The City Council were the sole judges of that. *Mayor, &c., of Baltimore vs. Reynolds,* 20 *Md.,* 1.

As to non-performance of contract within time fixed by its terms, see *Mappa vs. Los Angeles,* 61 *Cal:,* 310; *Mahoney vs. Braverman,* 54 *Cal.,* 565; 2 *Desty on Taxation,* p. 1324.

. As to performance of work, in accordance with valid contract, see *Bond vs. Newark,* 19 *N. J. Eq.,* 377; *City of Henderson vs. Lambert,* 14 *Bush,* 24; *Schuman vs. Seymour,* 24 *N. J. Eq.,* 149; *Dillon Mun. Corp.,* sec. 810.

McSHERRY, J., delivered the opinion of the Court.

By Ordinance number fifty-five of eighteen hundred and eighty-one, the Mayor and City Council of Baltimore directed Gay street, between Pratt and Aisquith streets, to be repaved with "Camp's Patent Process of Belgian Block Pavement," under the provisions of Ordinance number forty-four, approved June fourth, eighteen hundred and seventy-four; with the exception that advertising for bids or proposals for doing the work, as required by the last named Ordinance, was dispensed with. Ordinance number fifty-five provided that two-thirds of the cost of this re-paving should be paid by the owners of the property abutting on the street, and that the other third should be defrayed by the city. No bidding for the work was required because the process known as Camp's Process was a patented one, and was, therefore, under the exclusive control of its owners. An agreement was made between the city, through the City Commissioner, and the owners of the patent for the paving and kerbing designated by the Ordinance ; and a bond which is referred to as, and in fact is, the · only written contract on the subject, was executed to the city by the contractors, conditioned for the faithful performance of the work according to the specifications attached to the bond. In the bond it was stipulated that the work should be completed by the first day of December, eighteen hundred and eighty-one. The repaving, however, was not commenced until March, eighteen hundred and eighty-two, and was finished some-time in the following fall; and was then accepted by the City Commissioner, and subsequently was fully paid for by the city. The proportion of the cost payable by each abutting proprietor was duly ascertained, as required by Ordinance No. 44, and demand was made for the payment thereof. Thereupon an injunction was procured at the suit of the appellee restraining the collection of this tax. From the decree making the injunction perpetual this appeal has been taken.

The validity of the tax has been assailed upon two grounds, viz., first, because the contract between the city and the contractors is alleged to be illegal and void ; and secondly, because the work actually done under the contract is claimed not to be in accordance either with the contract or with the Ordinance No. 55.

1. It has been urged that the contract was invalid, first, because no liability ever accrued under it against the city to pay for the repaving, by reason of the fact that the work was not even commenced by the contractors until long after the period limited in the bond for its completion ; and secondly, because, though the Ordinance directed the repaving to be done with "Camp's Patent Process of Belgian Block Pavement," yet the contract, made under that Ordinance, provided that the work should be done in some other and different manner.

It will be observed that this is not a case where antecedent errors and omissions of a substantial character render the entire proceedings of the city void, as in *Mayor and City Council vs. Johnson,* 62 *Md.,* 288. That case is clearly distinguishable from the one now before us. There the failure to advertise, as required by the Ordinance, in three newspapers for proposals or bids for doing the work, was held to be such a substantial non-compliance with pre-requisite provisions of the Ordinance as to preclude the city from entering into any valid contract whatever in relation to the paving then done. But here, assuming the contract or bond to be otherwise valid, it is insisted that it became inoperative because the work was not commenced and not completed within the time specified by its terms. The objection does not imply or involve a denial of the power of the city to enter into this contract for doing this particular work in the particular manner pointed out by Ordinance, No. 55 ; but it broadly asserts that the mere failure to begin and to complete the work within the stipulated time, rendered the contract a nullity

from the beginning, and that therefore the city was not liable under it to the contractors, and that consequently the tax levied to pay for the work cannot be recovered. Whilst it is undoubtedly true that by the terms of the bond the work was to have been completed by the first day of December, 1881; still, it by no means follows that a failure to observe this requirement invalidated the contract; because, there are no words in that instrument indicating that the element of time was of the essence of the contract, or that a non-observance of that particular provision was designed, of itself, to terminate the liability of the city. After the work was fully completed by the contractors, accepted and paid for by the city, it would be, in our opinion, a very narrow and strained construction to hold that such a contract as this is invalid from the beginning, merely because the time fixed by it for the completion of the work had elapsed before the work was actually commenced. We have been referred to no case in support of this contention, and we believe it cannot be sustained either upon principle or authority. This Court in *Dashiell vs. Mayor, &c.,* 45 *Md.,* 629, has said, in speaking of just such a contract or bond as we now have before us, "the taking of such a bond, under the Ordinances on that subject, is a very proper precaution, in order to insure the doing of the work, and a departure from its terms allowed by the city, might be a very good defence for the sureties when sued thereon, but we do not see how such departure of *itself,* can have the effect to make the tax invalid." It has been repeatedly held that where *time* is not of the essence of the contract a mere failure to perform within the period specified will not avoid the agreement. *Scarlett vs. Stein,* 40 *Md.,* 526. We think, therefore, that the objection founded on this departure from the terms of the bond or contract cannot prevail.

The objection that the contract provides for the doing of the work in a manner different from that prescribed in the

ordinance and described in the patent, can be better understood after a brief reference to the claims of the patent and to the specifications accompanying the contractors' bond. There are two patents for "Camp's" pavement; one dated the twenty-ninth of October, eighteen hundred and seventy-two, and the other the tenth of April, eighteen hundred and seventy-seven. Under the first, the patentee claims: "1. A waterproof street pavement composed of blocks of stone purposely cut rough or split, in the form of parallelopipeds, and set on a bed of sand, the interstices between said blocks being filled out with a waterproof compound, of which asphaltum is the base, substantially in the manner and for the purpose shown and described. 2. In combination with pavement blocks of stone cut smooth on their ends, a bed of sand and a filling of waterproof compound having asphaltum for its base, substantially as described." Attached to the letters patent are diagrams showing the stones in place laid at right angles to the line of the street. Under the second patent what is claimed is "a stone pavement composed of rectangular blocks laid obliquely across the road-bed, combined with an asphalt filling between the stones, as and for the object specified." The specifications forming part of this second patent state that the rectangular blocks of granite or other hard stone are to be "laid obliquely or diagonally across the road-bed, which is previously prepared for their reception by rolling, &c.;" and that after the stones are laid they shall be pressed into place by a heavy steam roller. The specifications accompanying the contractors' bond, amongst other things, provide that the bed of the road may be rammed or rolled before laying the stones thereon; that the blocks of stone shall be laid in parallel lines at right angles with the street; that each block shall be separately rammed to a solid bearing or foundation with hand rammers; that the whole shall be covered with three inches of fine sand tamped into the joints; and that "the repairing be done

according to Camp's Patent Process of Belgian Block Pavement."

The particulars, wherein, it is insisted, the difference exists between the manner in which the contract provided that the work should be done, and the manner in which the patents, and therefore the ordinance, required it to be performed, are stated in the appellee's brief as follows: "The patent provided that the bed of the street should be rolled at right angles to the kerbing, varying from an angle of forty-five degrees to a right angle before the stones were laid.

"The contract provided that it either might be *rammed* or rolled.

"The patent provided that the stones when laid should be placed *diagonally or obliquely* to the road-bed, so as to prevent wheels of vehicles entering the joints.

"The contract provided that they should be laid at *right angles* to the road-bed.

"The patent provides that the blocks when laid should be *rolled with a heavy steam roller*, whereby they are firmly compacted together.

"The contract provides that each block shall be *rammed separately with a hand rammer.*

"The patent (indeed both patents,) provide that the joints between the stones *shall be filled with asphalt or other elastic filling*, whereby the pavement is rendered waterproof.

"The contract provides that the blocks when laid shall be covered with *three inches of sand tamped* into the joints."

As the provision in the patent with respect to the rolling of the street bed before the stones are laid thereon, was designed to secure a solid bed; it is not perceived that the clause in the contract allowing the street bed to be either rolled or *rammed*, instead of being only rolled, can possibly create any repugnancy. The object aimed at was

precisely the same in both instances, and the mere *mode* of accomplishing that object can make no practical or substantial difference.

In regard to the alleged conflict between the patent and the contract in relation to the angle at which the stones were to be laid, it is only necessary, at this point, to say, that this objection is founded upon a total misconception of the scope and the meaning of the patents, as will be indicated hereafter.

There is no inconsistency between the patent and the contract in regard to the mode by which the stones, when laid, are to be pressed or driven to a solid foundation. The application of *force* was required to accomplish this result. Whether the force was applied by the one or the other agency was wholly immaterial, provided the same purpose was accomplished.

Whilst the contract provided that the stones when laid should be covered with sand; it also provided, by declaring that Camp's process should be used, that the spaces between the stones should be filled in with elastic cement; and there was not in fact, as shown by the evidence, any irreconcilability between them in this respect.

There is certainly nothing in any of these grounds of alleged repugnancy between the contract and the ordinance, which could possibly justify a Court in restraining the collection of this tax.

II. It has been further insisted that the work was not done in accordance with the patent, or the ordinance, or the contract, and that therefore the tax cannot be enforced. The particular instances of this alleged departure are set forth as follows: First, that one-third of the street was paved with the stones laid at right angles to the road-bed instead of diagonally or obliquely, as required by the patent; secondly, that the road-bed was not either rolled, as required by the patent, nor rammed, as required by the contract, before the stones were laid; thirdly, that

the stones when laid were separately rammed instead of being rolled with a heavy steam roller, as required by the patent; and fourthly, that instead of the plastic cement being poured in between the stones, as required by the patent, sand was first put between the stones, then the sand was scraped out to the depth of two or three inches and the plastic cement poured in.

The evidence contained in the record shows that the blocks of stone were laid diagonally except between the rails of the car tracks and for a short space near East street, where they were laid rectangularly. It is further shown that the road-bed was not either rolled or rammed before the stones were laid ; and that after the stones were laid each one was separately rammed, but not rolled with a steam roller. It is insisted that this mode of doing the work was such a departure from the provisions of the ordinance, the terms of the contract and the description in the patents, as to render the tax levied to pay therefor illegal and void. We cannot give our assent to that proposition. The testimony emphatically shows that these matters of detail are in fact not material or substantial variations or departures from the patents. Under these two patents the stones may be laid either diagonally or rectangularly ; and in either event, the other conditions existing, the pavement would be Camp's patent process of Belgian block pavement. The object of the patents was to secure a waterproof pavement, and that is capable of being accomplished whether the stones are laid at the one or the other angle to the line of the street. The failure of the contractors to ram or roll the bed of the street before the stones were laid, did not invalidate the tax; because it is well settled that it is no defence to an assessment that the contractors did not perform the contract for the work strictly according to its terms.

The objection that the stones were separately rammed instead of being rolled with a steam roller, cannot be

37                    v. 68.

allowed to prevail. We are at a loss to see what possible difference it can make whether the one or the other means was adopted to accomplish the result intended, namely, the driving of the stones home to a solid bearing or foundation. It can scarcely be seriously contended that this pavement after being completed, is any the less Camp's patent process because a rammer was used instead of a steam roller to force the stones to a solid foundation. The one mode is certainly a mechanical equivalent of the other.

It was shown by the witnesses that the sand was placed between the stones to steady them whilst being rammed. This sand was removed to the depth of two or three inches and then the cement was poured in. This was a substantial compliance with the terms of the patent.

These objections, which relate to the manner in which the work was done, even though conceded to be departures from the terms of the contract, could not on that account, be allowed to defeat the collection of the tax. This doctrine is fully supported by authority. We content ourselves with a single quotation from *Cooley on Taxation,* 468 : "It is no defence to an assessment that the contract for the work was not performed according to its terms. The proper authorities must decide upon this, and if they accept the work, the acceptance, in the absence of fraud, is conclusive. And even fraud, it would seem, could not be accepted as a defence to an assessment, but should be determined in some direct proceeding instituted for the purpose. On this point the following remarks have been made in one case in which an assessment for the construction of a sewer was contested. 'It is needless to observe that no misconstruction or malconstruction of the work, arising from the incapacity, the honest mistake, or the fraud of the contractor, would invalidate the assessment, or relieve the parties assessed from the obligation to pay it. In this respect the property owners, assessed under the provisions of the law for the cost of a sewer, must stand upon the same footing

with parties assessed for taxes for the public benefit. They take the hazard incident to all public improvements, of their being faulty or useless, through the incapacity or fraud of public servants. The pretext that the tax-payer shall avoid the payment of his assessment because the funds are injudiciously applied, is the worst form of repudiation.'''

It follows, therefore, from the views we have expressed that the decree appealed from was erroneous; and it must be reversed and the bill must be dismissed.

*Decree reversed, and*
*bill dismissed.*

(Decided 15th March, 1888.)