# HAVRE DE GRACE WATER COMPANY *v.* MAYOR AND CITY COUNCIL OF HAVRE DE GRACE.

*Municipal Corporation—Purchase of Water Company Plant— Invalid Ordinance—Ratification by Legislature— Submission to Popular Vote—Option in City—Time of Exercise.*

In a suit by a water company against a city to compel specific performance by the latter of a contract to buy plaintiff's plant at an agreed valuation, which contract involved the exercise of an option of purchase contained in an ordinance under which the company had supplied water for city uses for twenty years, *held* that, in such collateral proceeding, the city could not assert that the ordinance was *ultra vires,* by reason of a provision therein for a tax rate to be levied for the company's benefit, or because the contract, by reason of a provision for its renewal at the end of twenty years, was of indefinite duration.

p. 251

A contract for the furnishing of water by a water company to a municipality is not unreasonable because by its terms it is to run for twenty years.                    p. 251

Where a city charter required the submission to the people of the question of the purchase of a water plant by the city, an ordinance providing for the purchase of such a plant without providing for such submission could not be supported on the theory that the charter requirement was to be read into the ordinance.                    p. 252

Acts 1922, ch. 176, sec. 340A, authorizing the issue of bonds by the City of Havre de Grace for the purchase of the plant of the Havre de Grace Water Company, "provided that the provisions of Ordinance No. 172, approved June 16, 1903, as to notice, appraisal, etc., be complied with," involved a conditional ratification by the Legislature of such ordinance, which was originally *ultra vires.*                    p. 253

The requirement of such act that the Mayor and City Council approve the appraisal of the plant and property of the

water company, as a condition precedent to the purchase thereof by the city and the issue of bonds therefor, was complied with by the passage by the council, and the approval by the mayor, of an ordinance purporting to have been passed in pursuance of the act, reciting the appraisal, and providing for the submission of the question of such purchase and issue of bonds to a vote of the people.                                        p. 254

The provision of Code Pub. Loc. Laws, art. 13, sec. 340, as re-enacted by Acts 1922, ch. 174, that whenever the Mayor and City Council of Havre de Grace, "having first obtained" the consent of the voters "as herein provided," determine to purchase a water plant, they are authorized to borrow the necessary sum, refers to section 152 of said article, which provides for the submission of such question to the voters before the city actually purchases the plant, and does not require the voters' consent prior to the approval of the appraisal by the Mayor and City Council, as provided by Acts 1922, ch. 176, sec. 340A.

pp. 254, 255

In a suit for the specific performance of a contract by a city for the purchase of the plant of a water company at an appraised price, the city cannot object that the notice given by it of its intention to exercise its option to purchase the plant was not given until after the date named in the enabling act, the company having accepted the notice without objection.

p. 255

*Decided March 10th, 1926.*

Appeal from the Circuit Court for Harford County, In Equity (OFFUTT, C. J.).

Bill by the Havre de Grace Water Company of Harford County against the Mayor and City Council of Havre de Grace. From a decree dismissing the bill, plaintiff appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, and DIGGES, JJ.

*Stevenson A. Williams,* with whom were *James A. C. Bond, James E. Boylan,* and *Fred R. Williams,* on the brief, for the appellant.

*Frederick Lee Cobourn* and *Thomas H. Robinson,* for the appellee.

ADKINS, J., delivered the opinion of the Court.

This is a suit for the specific performance of an alleged contract of sale and purchase, under section 14 of Ordinance No. 172 of the City of Havre de Grace, and chapter 176 of the Acts of 1922, between the Mayor and City Council of Havre de Grace and the Havre de Grace Water Company of Harford County, of the said company's plant.

Said section is as follows:

"Sec. 14. The Mayor and City Council of Havre de Grace shall have the right at the expiration of the period of twenty years from the date of the passage of this ordinance, and at the expiration of any one of the successive periods of twenty years thereafter, to purchase from said water company its entire water works, plant, including real estate, wells, water rights, buildings, reservoirs, pipes, machinery, fixtures, as the same may then exist, for an amount of cash equal to its then actual value.

"For the purpose of ascertaining and fixing said value, the following proceedings shall be had.

"If the Mayor and City Council of Havre de Grace desire to exercise the option hereby given, it shall give written notice to said Water Company not more than one year, nor less than six months, prior to the expiration of any one of said periods of its intention so to do. The city shall thereupon within twenty days from the service of said notice, appoint an appraiser and notify the water company of said appointment. In case the said Mayor and City Council shall fail to appoint said appraiser within said twenty days, the water company may in writing demand his appointment; and if the said appointment is not made within ten days after such written demand, such failure

shall be deemed a recall and cancellation of the notice of the exercise of said option, but shall not affect the right to purchase at the expiration of any of the succeeding periods of twenty years as herein provided for. The water company shall within twenty days after the receipt of said notice, appoint an appraiser and notify the Mayor and City Council of such appointment. The two appraisers shall within twenty days from the time of the appointment of the last appraiser appointed by or on behalf of said parties choose a third appraiser. In case the water company shall fail to appoint an appraiser within the time above limited, or in case the two appraisers shall fail to appoint the third within said time, then any person who may at that time be a judge of the Circuit Court for Harford County, or of the court that may have succeeded to its jurisdiction, shall appoint the appraiser on behalf of said water company, or appoint the third appraiser as may be required under the terms hereof. In case any appraiser so appointed shall die, resign or refuse to act, the party by whom he may have been appointed shall within twenty days after written demand by the other appoint his successor; if the appraiser so dying, resigning or refusing to act shall be the third appraiser appointed by said judge, or if the party so entitled to make said appointment shall fail to make the same within the time herein limited therefor, the appointment shall be made by the judge aforesaid. The above provisions shall apply as to any person who may at any time succeed to the position of appraiser hereunder.

"The three appraisers shall provide for their own procedure and shall fix and determine the said actual cash value based upon the earning capacity of the property so to be sold; they shall make their award or decision in writing within sixty days of the time of their appointment, and the award or decision of a majority of said appraisers upon the question of said value or upon any other question they are authorized to decide, shall be conclusive and binding on the said

water company and the said Mayor and City Council of Havre de Grace.

"The award of said appraisers or the valuation of said property so made by them shall be payable within sixty days after written notice to the said Mayor and City Council of such award or decision. And upon payment of said award the said Havre de Grace Water Company of Harford County shall by good and sufficient deed or other instrument transfer, assign and convey all of its said property so valued to the said Mayor and City Council of Havre de Grace, and upon such payment or tender, the rights, privileges and franchises hereby granted shall cease and determine.

"If any act required by this section to be done by either said city or said water company shall be enjoined by legal process, then the time for doing such act or thing shall extend for a period after the dissolution of such injunction or removal of such prohibition equal to the time either party may have been deprived of by said injunction or prohibition. In case the said Mayor and City Council shall fail to exercise said option at any one of said periods above mentioned for the purchase of said plant and property, then the rights, privileges and franchises hereby granted to the said Water Company shall continue until the expiration of the succeeding period, and the arrival of the next succeeding time for the purchase of said property herein provided for until said option is actually exercised and said property purchased."

The relevant provisions of the charter, in force when this ordinance was passed, on June 16th, 1903, are contained in chapter 127 of the Acts of 1902, as follows:

"152. The Mayor and City Council shall have power to pass all such ordinances directly or impliedly authorized by this sub-title, and not contrary to the Constitution and laws of this State as they may deem necessary for the good government of the city; * * * to protect and preserve the health of the citizens and the property, rights and privileges of the city; * * * for the preservation of peace and good order, secur-

ing persons and property from violence, danger or destruction; * * * for the levy and collection of a tax thereon (all kinds of property) for the general purpose of the corporation, not exceeding in any one year eighty-five cents to every one hundred dollars of assessable property; * * * to purchase fire engines, establish, construct and maintain waterworks, or whatever appliances may be deemed best for extinguishing fires and protecting the property of the inhabitants from injury by fire, and to furnish and supply all pure water for the use of the inhabitants under such rules and regulations as they may by ordinance prescribe; * * * they shall have power to contract with individuals, companies or corporations for the introduction of gas, water or electricity into said city, and for the lighting of the streets and alleys thereof; they may erect or purchase any plant for the supplying of gas, water or electricity to the city and its inhabitants for public or private uses, and may operate the same. They shall have the power to construct or maintain or contract for the construction of sewers, or a general system of sewers for the city; provided, however, that before the said Mayor and City Council shall proceed to erect or purchase any plant for the supplying of gas, water or electricity to the city or its inhabitants and before authorizing the construction of any general system or systems of sewers they shall first submit such proposition or propositions to the legally qualified voters of said city at a general or special election to be held after at least twenty days' previous notice thereof. And if at said election a majority of said voters shall approve any such proposition or propositions, the said Mayor and City Council shall thereupon proceed to carry same into effect. But if a majority of said voters shall disapprove of any such said proposition or propositions, then the said Mayor and City Council shall abandon the same. And no such proposition shall again be submitted to the public vote until at least six months have elapsed from the date of the election at which said proposition was dis-

approved.  No use shall be made of the streets of said
city by any individuals or corporation for the pur-
pose * * * of gas or water conduits or pipe lines with-
out the consent of the Mayor and City Council, and
subject to such franchise tax and regulations as they
may by ordinance prescribe."

Prior to the passage of said ordinance, the company since
the year 1883, had been supplying water to the city under
Ordinance No. 41, which was repealed and re-enacted by
Ordinance 172, the latter ordinance, however, providing that
it was not passed "to repeal Ordinance No. 41 except for the
purpose of amending and adding to the same and is not
intended to impair the obligations of any of the subsisting
contracts of the said Havre de Grace Water Company, with
its creditors."

The new ordinance granted to the water company for a
period of twenty years and "for the periods for which it may
be renewed or continued in accordance with the terms here-
of," the franchise to reconstruct, maintain and operate, with-
in the City of Havre de Grace, water works to supply the
city and its inhabitants with water for public and private
use; provided for the annual levy of a tax of five cents on
each one hundred dollars of taxable property within the
city limits for the use of the company, the amount to be paid
the company annually by the city not to be less than six hun-
dred and fifty dollars; also provided for the enlargement of
the company's reservoir, the duplication of its pumping ap-
paratus, boilers and connections, and the extension of its
mains, and many other details as to the character of the plant
and the service to be rendered.

The terms of the ordinance were promptly accepted in
writing by the company, and, according to the agreed state-
ment of facts, have been duly complied with.

In April, 1922, chapter 176 of the Acts of 1922 was
passed, to become effective June 1st, 1922, which added a new
section to article 13, Code Public Local Laws, Harford
County, as follows:

"ACT OF GENERAL ASSEMBLY, 1922, ch. 176, page 405.

"Approved April 13, 1922.

"In effect June 1, 1922.

"Section 1.  New section added to article 13, Code Public Local Laws, Harford County, Havre de Grace, to be section 340A, to follow section 340.

"Section 340A.  The Mayor and City Council of Havre de Grace are hereby authorized and empowered to issue bonds on the credit of said city for the purchase of the plant, pipes, reservoir and other property of the Havre de Grace Water Company, provided that the provisions of Ordinance No. 172, approved June 16, 1903, as to notice, appraisal, etc., be complied with.

"Provided, that the notice to purchase shall be given to the said Havre de Grace Water Company on or before December 1st, 1922, and that the appraisal of the plant and property of said company be approved by the Mayor and City Council.

"Provided, further, however, that before said bonds shall be issued and the plant and property of said company actually purchased, the question shall be submitted to the legal and qualified voters of said city at the regular city election in May, 1923.  If a majority of the votes cast on said question be in favor of issuing said bonds, then the bonds shall be issued in the manner and under the terms and conditions as to form, maturity, redemption, sinking funds, interest and other particulars as provided in section 309 of this article for the issue of bonds for the liquidation of the floating indebtedness of said city."

Within less than a year and more than six months prior to the expiration of the period of twenty years following the date of said ordinance, the city, by a resolution duly passed, having determined to exercise said option of purchase, caused the following letter to be written to the company:

"Havre de Grace, Md., Dec. 7, 1922.
"Mr. George W. Albaugh, Treasurer,
  "Havre de Grace Water Company,
   "Westminster, Maryland.
"Dear Mr. Albaugh:

"At its regular meeting on the 4th inst., the Council, in regular session, requested that I notify you regarding the expiration of your franchise and agreement with the city in June next, stating that it is the desire of the Mayor and City Council that an appraisal as outlined in the agreement, be made, prior to that time, with a view of municipal purchase thereof.

    "Very truly yours,
        "Geo. H. Cobourn, Clerk."

Pursuant to which the respective parties named appraisers, who appointed a third, and the three appraisers made a unanimous award by which they determined the actual cash value of the company's property to be acquired by the city, based upon its earning capacity, to be $180,571; and delivered the same to the respective parties.

Whereupon the following ordinance was passed:

"Ordinance No. 307."

"An ordinance to submit to the legally qualified voters of the City of Havre de Grace, a proposition to purchase the plant, reservoir, franchise and other property of the Havre de Grace Water Company, and to issue bonds on the faith and credit of said city to pay therefor.

"Whereas, by the terms of Ordinance No. 172 of the Mayor and City Council of Havre de Grace, approved June 16, 1903, the said Mayor and City Council is given the right to have appraised and purchased the rights, franchise and property of the Havre de Grace Water Company, and

"Whereas, by chapter 176 of the Acts of 1922, Public General Laws of the State of Maryland, the said Mayor and City Council is given the power to issue bonds on the faith and credit of said city to pay for the

said property of said water company, provided that said property has been previously appraised as provided by Ordinance No. 172 of said Mayor and City Council, and

"Whereas, said property of said water company has been appraised as provided in Ordinance No. 172 at the sum of $180,571.00, and now, therefore:

"Section 1. Be it enacted and ordained by the Mayor and City Council of Havre de Grace, that there shall be submitted to the qualified voters of said city for their approval or rejection, at the regular municipal election to be held on the first Monday in May, 1923, a proposition to purchase the plant, reservoir, franchise and other property of the Havre de Grace Water Company, and to issue bonds on the faith and credit of said city as provided in the city charter, to provide the necessary funds to pay therefor.

"Section 2. Be it further enacted and ordained that the supervisors of election of said city shall place in an appropriate place and form, on the official ballot to be used in the municipal election to be held on the first Monday in May, 1923, the following proposition:

"For the purchase of the Havre de Grace Water Company and the issuance of bonds to pay therefor.

"Against the purchase of the Havre de Grace Water Company, and the issuance of bonds to pay therefor.

"Section 3. And be it further enacted and ordained:

"That if a majority of the legally qualified voters of said city shall be in favor of said proposition, then said Mayor and City Council shall proceed to issue bonds for the purchase price of said Havre de Grace Water Company, in accordance with the provisions of the City Charter. But if a majority of the votes cast at said election shall be against the proposition, then said Mayor and City Council shall abandon the same.

"Section 4. Be it further enacted and ordained that this ordinance shall take effect from the date of its passage."

Pursuant to which the city caused to be submitted to its legal and qualified voters at the regular city election in May, 1923, the question as to whether or not the said voters were in favor of the purchase of the water works and the issuance of bonds to pay therefor, at which election a majority of the votes cast was in the affirmative.

The agreed statement further shows that the taxable basis of the city for the year preceding the statement, and the indebtedness thereof, are as follows:

"Real and tangible personal property.... $3,479,401.00
Banks and Trust Companies...........   280,810.56
Public Service Corporations...........   447,094.08
Ordinary business corporations.........   110,266.86

Bonded indebtedness outstand-
    ing .....................$86,000.00
Current and floating indebted-
    ness not in the form of
    bonded obligations ........ 14,000.00"

Appellee's objection to the specific enforcement of Ordinance No. 172, as stated in its brief, "is based on the fact that said ordinance is *ultra vires,* because the Mayor and City Council of Havre de Grace had no authority under the terms and provisions of the charter of said city to pass the same." So far as this objection applies to terms of the ordinance relative to the tax rate for the benefit of the company and the indefinite time for the duration of the contract, and to the provision for the payment of a minimum annual sum, it need not be here considered because:

(a) As to these the contract has been executed so far as the first twenty-year period is concerned, and the city can not be heard to set up the invalidity of the renewal in a collateral proceeding. *Benjamin v. Bruce,* 87 Md. 256; *Walker v. Richmond,* 173 Ky. 26; 7 R. C. L., p. 677. Whether the renewals provided for could have been enforced it is not necessary to inquire. The definite period of twenty years was not unreasonable. *Westminster Water Company v. Westminster,* 98 Md. 551.

(b) These matters are not involved in the present controversy.

The important questions are:

1. Was the provision of the ordinance for the purchase of the plant at the valuation of appraisers, without any provision for submission to the people, *ultra vires?*

2. If so, was the ordinance ratified by chapter 176 of the Acts of 1922 ?

3. Was the appraisal of the plant and property of the company approved by the Mayor and City Council?

The learned chancellor, who decided this case below, in a forceful opinion, answered the first question in the affirmative and the last two in the negative.

We agree with his conclusion on the first proposition. It is conceded by appellant that, under the charter, submission to the people was necessary, and that there is no express provision in the ordinance for such submission, and no proviso that the purchase of the plant by the city shall depend upon the approval of the people.

But it is strongly urged that the ordinance was made subject to chapter 127, section 152, of the Acts of 1902, and that the ordinance and the act must be read together; that the charter power of the city as contained in that act should be read into and considered a part of the ordinance; that the ordinance only went so far as to fix a method of ascertaining the actual cash value of the plant, if the city should decide in 1923 to exercise its option to purchase, and is consistent with and complementary of the approval by the voters required by the charter. But we are unable to agree with this contention. It is not consistent with the unconditional provision in the ordinance that "the award of said appraisers or the valuation of said property so made by them shall be payable within sixty days after written notice to the said Mayor and City Council of such award or decision."

Besides it would be subscribing to a very dangerous principle to hold that everything necessary to the validity of an ordinance may be read into it, on the assumption that the

ordinance was intended to be subject to *all* charter require-
ments. It can readily be seen what this would lead to in
practice.

We are unable to concur in the chancellor's answers to
the second and third questions.

In our opinion, chapter 176 of the Acts of 1922 was a
conditional ratification of Ordinance No. 172.

In *Ches. and Pot. Telephone Co. v. Baltimore,* 89 Md.,
at page 714, referring to certain rights which the city had
granted the telephone company, the grant of which was
alleged to have been *ultra vires,* it was said, Judge Pearce
writing the opinion:

"Whether the Mayor and City Council had the power to
grant these rights and privileges at the time that contract was
made, it is not necessary to inquire, because chapter 200 of
1892 must be taken as a legislative ratification and confirma-
tion of that contract, with all its rights and privileges.
Cooley, in his work on *Constitutional Limitations,* 6th Ed.
466, speaking of contracts by municipal corporations, which,
when made, were in excess of their authority, but subse-
quently have been confirmed by legislative action, says: 'If
the contract is one which the Legislature might originally
have authorized, the right of the Legislature to confirm it
must be recognized.' "

In *Baltimore and Potomac R. R. v. Reaney,* 42 Md. 117,
the Act of 1870, ch. 80, while containing no express terms of
ratification of the ordinance under which a tunnel had been
built by the railroad company, used in one section "terms
equivalent to terms of express ratification," and this Court
said through Judge Alvey: "The authority given by the city
to make the tunnel is recognized, and there is power given
to charge additional profits and tolls for its own use. This
is a clear ratification or grant of authority, at least by impli-
cation, and it is settled that such authority may be granted
by implication. *Springfield v. Conn. R. R. Co.,* 4 Cush. 63."
See also *O'Brien v. Co. Com.,* 51 Md. 24; *Pompton v. Cooper
Union,* 101 U. S. 202.

The conditions in the said act not found in the ordinance, are:

1. That the appraisal of the plant and property of the water company be approved by the Mayor and City Council.

2. That before said bonds shall be issued and the plant and property of said company actually purchased, the question shall be submitted to the legal and qualified voters of said city at the regular city election in May, 1923, and the purchase of the plant and the issue of the bonds approved by a majority of the votes cast on said question.

The first condition was, in our opinion, complied with by the passage of Ordinance No. 307. The second, by the submission of the question, as provided by said Ordinance No. 307, to the people at said election and the affirmative vote thereon by a majority of the votes cast.

We are not impressed by the argument of appellee that the approval of the Mayor and City Council must be had *after* the submission to the people. That argument is based on the language of section 340 of article 13, Code Public Local Laws, Harford County, Havre de Grace, as re-enacted by chapter 174 of the Acts of 1922, as follows:

> "Whenever the Mayor and City Council of Havre de Grace, having first obtained the approval of and consent of a majority of the legally qualified voters of said city, as herein provided for, shall determine to purchase or erect any * * * water plant * * * they are hereby authorized and empowered to borrow on the credit of said city a sum of money necessary for such purchase or erection and to issue bonds therefor."

The words "as herein provided" refer to section 152 of said article, which provides for the submission of the question of the purchase or erection of a water plant to the legally qualified voters of the city before the city "shall proceed to erect or purchase." Therefore, the words in section 340, "having first obtained the approval * * * as herein provided for" mean that the approval of the people of a plan to purchase or erect a plant must first be obtained be-

fore the city shall *actually* erect or purchase such plant and issue bonds to pay therefor. They have no reference to the provision in chapter 176 of the Acts of 1922, codified as section 340A, that "the appraisal of the plant and property of said company be approved by the Mayor and City Council." It is section 340A, and not section 340, which controls here.

And we are unable to agree with the chancellor that "the approval of the appraisal of the plant and property cannot be inferred from the passage of Ordinance No. 307."

The act, in pursuance of which the ordinance purports to have been passed, expressly makes such approval a condition; and we think, in view of this, it is fair to assume that the city council did not pass the ordinance and the mayor approve it without approving the proposition which they thus submitted for the final and irrevocable determination of the people.

The suggestion is made, by appellee, but not seriously pressed, that notice of its intention to exercise its option was not given by the city until December 7th; whereas the Act of 1922 required such notice to be given on or before December 1st, 1922. But no point was made of this by the company. On the contrary, it accepted the notice and all parties proceeded to carry out the provisions of the ordinance and of the act. This is not an objection open to the city.

> *Decree reversed and cause remanded, with*
> *costs to appellant.*