489 A.2d 16

**MONTGOMERY COUNTY, Maryland**

v.

**Edward W. SCHULTZE et al.**

**No. 72, Sept. Term, 1984.**

Court of Appeals of Maryland.

March 8, 1985.

Nathan J. Greenbaum, Sr. Asst. County Atty., Rockville (Paul A. McGuckian, County Atty., Robert G. Tobin, Jr., Deputy County Atty. and Joseph M. Mott, Asst. County Atty., Rockville, on brief), for appellant.

Kathleen Sheehy, Silver Spring (Stephen Z. Kaufman and Linowes & Blocher, Silver Spring, on brief), for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and EDWARD D. HIGINBOTHOM, Associate Judge of the Third Judicial Circuit of Maryland (retired), Specially Assigned.

MURPHY, Chief Judge.

At issue in this case is the validity of a special assessment levied against properties abutting a road improvement project in Montgomery County, Maryland.

## I

Montgomery County Code (1977 Repl.Vol.), § 49–37 provides:

"(a) No road shall be constructed by the county, whether on force account or by contract or both, unless ... the cost of the road is to be charged against the benefited property in accordance with sections 49–51 to 49–61 and subsection (b) of this section. ...

(b) Whenever a road is constructed as a 'front foot assessment' project, pursuant to sections 49–51 to 49–61, the portion of the cost chargeable and assessed to the benefited abutting properties shall be all costs of construction, including costs of acquisition of land or interest therein, for right-of-way.

(c) All costs in excess of the special benefit to the abutting property or otherwise waived in this article shall be borne by the county."

Section 49–52 provides that whenever county road construction is authorized, the cost shall be assessed "as a benefit to all property adjacent to the right-of-way of such road and specially benefited by the construction thereof; provided, that:

(a) ...

(b) No such property shall be assessed in excess of the amount by which such property is specially benefited by such construction."

Section 49–55 provides that the County Council shall, by resolution:

"assess the costs of the road project against the adjacent properties pursuant to the county road construction code in force at the time and subject to the limitations of section 49–52. Such assessments shall be computed on the basis of the linear frontage of such properties except as otherwise provided in section 49–56 and in the road construction code."

Pursuant to these statutory provisions, the Montgomery County Council, having determined that a public need existed to widen Randolph Road between Parklawn Drive and Rockville Pike, authorized completion of the work and the imposition of an assessment upon the specially benefited properties abutting the roadway project. The assessments were calculated according to the front-foot formula by determining each abutting property's proportionate share of the entire construction cost. Twenty-five properties contained frontage on the improved roadway. Nineteen were privately owned and were used for light industrial and commercial purposes; six properties were state owned or otherwise exempt from assessment. In the front-foot calculation, 60 percent of the total costs of construction were allocable to the exempt properties; their proportionate

share of the total cost of construction was paid by the County.

## II

Under the front-foot assessment formula authorized by §§ 49–37(b) and 49–55, Edward Schultze and Maurice Berk, as abutting property owners, were assessed, respectively, the amounts of $19,378.10 and $43,499.33. Each appealed to the Circuit Court for Montgomery County; they alleged, among other arguments, that some, if not all, of the benefit of the road improvement project accrued to the public in general, and that it was thus improper to assess the total construction costs as a special front-foot benefit to the abutting property owners.

The circuit court (Bell, J.) concluded that the assessed properties were in fact specially benefited by the project. It also found that there was a public need for the road improvement and that the public benefited from it. It further found that the County absorbed 60 percent of the total construction costs allocable under the front foot method to the exempt properties, but that no part of that amount reflected any costs "attributable to a public benefit." Consequently, the circuit court remanded the case to the County Council to "adjust the front-foot assessment accordingly."

The County appealed claiming that the circuit court had in effect judicially repealed §§ 49–37 and 49–52 by establishing a new prerequisite to the authority of the County Council to levy a special benefit assessment in that the total cost of a road project could no longer be assessed against the abutting property owners but must be apportioned between the specially benefited properties and the public at large. Finding no merit in the County's arguments, the Court of Special Appeals affirmed, with modifications. *Montgomery County v. Schultze,* 57 Md.App. 781, 471 A.2d 1129 (1984).

The intermediate appellate court concluded, after an extensive review of our cases, that "where the primary purpose of the improvement is not to confer a special benefit upon the adjacent property, ... the predominate general benefit and public purpose for the improvement must be a predicate consideration in determining whether and what the special benefit assessable to each abutting property is to be." 57 Md.App. at 790, 471 A.2d 1129. The court said that the purpose of the construction in this case was not to confer a special benefit on the adjacent properties but rather to enhance Randolph Road's utility as a cross-county connector road, replacing the need for a long proposed freeway. *Id.* It interpreted §§ 49–37 and 49–52 to require "some apportionment of the total costs to the public whose interest is in this case the primary consideration for the construction." *Id.* at 794, 471 A.2d 1129. It said that the record did not disclose "that apportioning the costs was ever considered." *Id.* It said that the enhanced benefit to the property by reason of proximity alone is not sufficient to require the more proximate taxpayers to shoulder the entire cost of a project purposed generally to be beneficial to, and primarily used by, the public at large. *Id.* at 795, 471 A.2d 1129. That may be permissible, the court said:

> "when the purpose of the improvement is to confer a special benefit on the adjacent properties.... If the statute does not allow for some division of costs to reflect general public participation where the improvement is more clearly for the public (rather than a particular district or the adjacent property owners), the record must reflect that public cost participation was contemplated and to some degree apportioned by the council when a want of any apportionment is judicially raised." *Id.*

Section 49–37(b) did not, the court observed, provide for "any apportionment between public general funds and specially benefited adjacent property assessments," *id.* at 797, 471 A.2d 1129, but § 49–37(a) required that the road construction costs be charged against the benefited properties " 'in accordance with sections 49–51 to 49–61 and subsection

(b) of this section.' " *Id.* at 801, 471 A.2d 1129. Reading the statutes *in pari materia*, the court said that the County Council did not intend that the costs chargeable to the benefited abutting properties would necessarily be all costs of construction but rather that § 49–37(b) was intended merely "as a cap not a mandated starting point." *Id.* at 801, 471 A.2d 1129. It found that the County Council based its assessment on the recommendation of a county appraiser, which was "arbitrary, unfounded and [based upon an] improper interpretation of the statutes." *Id.* at 800, 471 A.2d 1129. The court pointed out that the appraiser simply determined to apply the front-foot assessment rule to all costs of construction, as equalling the special benefit to the abutting properties. Thus, the court said, that notwithstanding the provision of § 49–52(b)—that no property shall be assessed in excess of the amount by which such property is specially benefited as a result of such construction—the appraiser "implicitly mandated what constitutes the total special benefits which he thought were mandated as being the total amount of the assessment." *Id.* at 799, 471 A.2d 1129. The court continued:

"The 'special benefit' in the appraiser's mind has by fiat become the cost of the project which eliminates the necessity of determining the real value of the improvement to the property abutting, beyond its benefit to the public generally. His interpretation of §§ 49–37(a) and (b) leaves § 49–52(b) without any meaning. Such an absurd intention we may not attribute to a legislative body." *Id.* at 799–80, 471 A.2d 1129.

The Court of Special Appeals emphasized that no part of the 60 percent total construction costs absorbed by the County on account of the nonassessable properties was attributable to the public benefit and that, as a consequence, the nineteen specially benefited property owners were assessed "whatever was necessary to provide a road, the existence of which is necessarily justified by general public interest, need and convenience as well as being considered an extension of a cross-county thoroughfare."

*Id.* at 800–01, 471 A.2d 1129. The court said that because, for assessment purposes, a public benefit is too great an abstraction to quantify, it would be more appropriate on remand to the County Council for the Council to first determine the private benefit and then apply it to the costs of construction. *Id.* at 802, 471 A.2d 1129. As to this, the court said that such benefits apportioned on a front-foot basis under § 49–55 could be all construction costs, "but in no case could the assessment to any property exceed the value by which the property is actually specially benefited by the construction," with the balance being paid by the County. *Id.* Thus, the court said, "by determining the benefit and applying it to the cost, rather than determining the costs to be the benefit, there may indeed be other costs for the County to bear." *Id.* The court concluded:

"The apportioning of the assessment among those specially benefited properties (which simplified is construction cost divided by total linear frontage times individual frontage) is a legislative plan that is neither indefinite nor unjust ... and as such may not be reviewed in the absence of fraud or mistake. *Leonardo v. County Comm.*, 214 Md. 287, 307, 134 A.2d 284 (1957). See also *Harlan v. Bel Air*, 178 Md. 260, 267–268, 13 A.2d 370 (1940). The 'mistake', however, was not in the formula distributing the assessment; it was in the determination of the sum of the special benefits by the arbitrary application of a single standard benefit predicated upon an irrelevant factor.

"The right that has evolved for government to apportion the costs of highways more to those specially benefited than to the public generally did not contemplate that a dominant public use would be totally subsidized by the private benefactor. The statute that requires that all construction costs, including land acquisition, be assessed to the abutting property can only be valid to the extent that it means what it says: 'the portion of the cost' attributable to the abutting owner, implicitly beyond that

which is generally beneficial to—and to be paid for by—the public." *Id.* at 802–03, 471 A.2d 1129.

We granted the County's certiorari petition to determine whether the Court of Special Appeals correctly interpreted the controlling county ordinances. 300 Md. 155, 476 A.2d 723.

### III

A special assessment is a special charge imposed by law on real property to defray the expense of a local municipal improvement. *Sanitary Commission v. Noel,* 155 Md. 427, 142 A. 634, *appeal dismissed,* 278 U.S. 573 (1928); *United R. & E. Co. v. M. & C.C. of Balto.,* 127 Md. 660, 96 A. 880 (1916). In order to justify a special assessment for a local improvement, however, there must be both a public purpose and a special benefit to the properties to be assessed over and above that accruing to the public. *V.F.W. v. Montgomery County,* 207 Md. 442, 448, 115 A.2d 249 (1955). In other words, the special benefit must be in excess of, or different from the benefit inuring to the general public. *Leonardo v. County Comm.,* 214 Md. 287, 134 A.2d 284 (1957), *reh'g denied,* 355 U.S. 967, 78 S.Ct. 534, 2 L.Ed.2d 543 (1958); *M. & P.R. Co. v. Nice,* 185 Md. 429, 45 A.2d 109 (1946); *Cons. G.E.L. & P. Co. v. M. & C.C. of Balto.,* 130 Md. 20, 99 A. 968 (1917); *Gould v. Baltimore,* 59 Md. 378 (1883). *See also* 14 McQuillan, *Municipal Corporations* § 38.32 (3rd ed. 1970). Special assessments are thus imposed because the improvement for which the assessment is levied causes an enhancement of the property's value, with no pecuniary loss suffered by the property owner. *Leonardo v. County Comm., supra; Pumphrey v. Co. Commissioners,* 212 Md. 536, 130 A.2d 297 (1957); *V.F.W. v. Montgomery County, supra; Leser v. Wagner,* 120 Md. 671, 87 A. 1040 (1913), *aff'd,* 239 U.S. 207, 36 S.Ct. 66, 60 L.Ed. 230 (1915). *See also* W. Page and P. Jones, 2 *Taxation By Local And Special Assessments,* §§ 651, 652 (1909). An assessment is thus levied in an amount calculated to approximate the value of the property's increase, i.e.,

the special benefit. *V.F.W. v. Montgomery County, supra;
United R. & E. Co. v. M. & C.C. of Balto., supra; Frieden-
wald v. Baltimore,* 74 Md. 116, 21 A. 555 (1891). *See also*
14 McQuillan, *supra,* at §§ 38.01, 38.31.

A legislative determination as to the imposition of
a special assessment upon property specially benefited is
presumed correct. And an assessment, if imposed accord-
ing to a definite and just plan, will not be disturbed where
neither fraud nor mistake appears. *Montgomery Co.
Council v. Summers,* 274 Md. 110, 332 A.2d 646 (1975);
*Murphy v. Montgomery County,* 267 Md. 224, 297 A.2d 249
(1972); *Leonardo v. County Comm., supra; V.F.W. v.
Montgomery County, supra; Sanitary Commission v.
Noel, supra.* One means for calculating a special assess-
ment is the "front-foot" formula which has been sanctioned
by this Court as a convenient substitute for the estimate of
benefits conferred, especially where the nature of the prop-
erty involved "makes it a reasonable method without caus-
ing injustice through inequalities." *Harlan v. Bel Air,* 178
Md. 260, 268, 13 A.2d 370 (1940). *See also Dinneen v.
Rider,* 152 Md. 343, 136 A. 754 (1927); *Bassett v. M. & C.C.
of Ocean City,* 118 Md. 114, 84 A. 262 (1912).

Placing reliance upon these settled principles of special
assessment law, the County maintains that the rate per
front foot, as calculated in this case, was a fair estimate of
the special benefits actually conferred upon the properties
abutting the improved roadway. While the County does not
take issue with the finding that the widened roadway was
primarily for the public benefit and was not undertaken for
the special benefit of the abutting properties, it argues that
nothing in the provisions of §§ 49–37 or 49–52 requires it to
apportion any part of the costs of the road to the public at
large. The County suggests that the lower courts have in
effect invaded the legislative province of the County Coun-
cil and read into the ordinances a public apportionment
requirement that does not exist. In this regard, the County
says that while special benefits are something above and

beyond the benefit which inures to everyone in the community from having a road improvement, a general benefit to the public, standing alone, cannot be quantified by a dollar amount. The County contends that the public necessity authorizing construction of a road is totally unrelated to the assessment process as it only insures that before public funds are expended there is a substantial relationship to the public welfare. The County acknowledges that if an assessment is excessive and, therefore, results in the property not being benefited by the improvement to an extent substantially equal to the amount of the assessment, the owner would thereby be deprived of property in violation of constitutional requirements. No such argument is presently before us, as the County points out.

IV

We agree that the mode of assessment is essentially a legislative matter, that the front-foot benefit formula is generally a valid method of assessment, and that it is only necessary that the owner's property be increased in value by the improvement in an amount substantially equal to the sum of the special assessment. The Montgomery County ordinances reflect these principles. Reading the ordinances together and harmonizing their provisions, *see Smith v. Higinbothom,* 187 Md. 1, 48 A.2d 754 (1946), they clearly recognize that the total costs of construction, including costs of land acquisition and right-of-way interests, constitute a maximum ceiling in the assessment determination process (§ 49–37(b)); that the assessment may in no event exceed the amount by which the property is specially benefited (§ 49–52(b)); and that there may be costs within the "total costs" formulation which are in excess of the special benefits actually conferred on the abutting property and which the County must itself pay or waive (§ 49–37(c)). Thus, while it may be appropriate to utilize the front-foot method of assessing property even where the improvement was not undertaken for the special benefit of the adjacent property owners, the method must be fairly applied in light

of the improvement's primary purpose. In other words, where the project was undertaken, as here, to facilitate the public's transportation needs, and thus to benefit the public generally, the front-foot rule cannot be so mechanically aplied as to require the adjacent property owners automatically to pay the total costs of construction without any relation to the special benefit actually conferred upon the property.

The appraiser in this case concluded that the total costs equalled the total benefit to the property owners on a proportionate front-foot basis. He stated in his report:

"The premise under which front-foot benefits are estimated is that the increase in value to the property is equal to the cost that would accrue to a developer who built an industrial subdivision in which he would be required to dedicate land for street and sidewalks, and then build them to County standards."

It is apparent that the appraiser did not take into account the provisions of the county ordinance requiring the property owners to pay only that portion of the total costs as actually reflect the special benefit conferred upon the property, i.e., the benefit over and above that to be absorbed by the County, if any, to compensate for the public benefit. In so concluding, we have considered the County's argument that the controlling ordinances make no allowance for apportionment of the public benefit vis-à-vis the special benefit conferred upon the abutting property. We think it implicit in the ordinances, however, that in circumstances like those here involved, the assessment must take into account, as a matter of fact, whether the special benefit is less in amount than the total project costs, bearing in mind the benefit which accrues to the general public by reason of the improvement. *See Teutsch v. City of Santa Fe*, 75 N.M. 717, 410 P.2d 742 (1966).

While the opinion of the Court of Special Appeals appears to contain some internal contradictions, we think its ultimate holding amounts only to that which we have herein

outlined.    In accordance with these precepts, the matter must be remanded to the County Council for a redetermination of the proper amount of the assessment imposed upon Schultze and Berk.

JUDGMENT AFFIRMED, WITH COSTS.