490 A.2d 749

**WASHINGTON SUBURBAN SANITARY COMMISSION**

v.

**William F. EVANS, et ux.**

**No. 1053, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

April 12, 1985.

Roger C. Duncan, Hyattsville, for appellant.

Hervey G. Machen, Hyattsville, for appellees.

Argued before WEANT, ALPERT and KARWACKI, JJ.

KARWACKI, Judge.

In this appeal we are called upon to review the propriety of a benefit assessment levied on the property of William and Kathleen Evans, the appellees, for the construction of water and sewer facilities by the appellant, Washington Suburban Sanitary Commission (WSSC). The WSSC is an agency of the State of Maryland whose public duties, among other things, are to provide water and sewer service to the residents of the Washington Suburban Sanitary District, which comprises most of Prince George's and Montgomery Counties. Pursuant to Md.Code (1957, 1983 Repl. Vol.), Article 29, § 5–101, the WSSC is empowered to make

assessments on property to defray expenses for water and sewer construction. The disagreement between the parties arose over such an assessment.

The appellees acquired by deed dated June 11, 1982, an unimproved lot known as 11900 Pleasant Prospect Drive in Mitchellville, Maryland. This lot is recorded among the Land Records of Prince George's County in Liber 5544 at Folio 26, Lot No. 44, Plat 3, in the subdivision of Pleasant Prospect. The size and configuration of the appellees' lot, as well as its location in the subdivision, can be more readily discerned by reference to the sketch appended to this opinion which the reporter is directed to reproduce.

In accordance with Article 29, § 5–101, *supra,* the WSSC sent the appellees a letter dated April 13, 1983, advising them that a front-foot benefit charge would be levied against their property to recover the costs of water and sewer construction. The WSSC informed the appellees that their property had been classified as subdivision residential, and that because the WSSC had determined that their lot was shaped normally, it would be assessed on the amount of footage abutting Prospect Drive, the street under which the water main is placed. This "front-foot" calculation is the method routinely employed by the WSSC in making benefit assessments. The WSSC informed the appellees that their property had been assessed as follows:

| FOOTAGE | × | RATE PER FT. | = | AMOUNT |
|---|---|---|---|---|
| Water FFBC 364 | × | $1.98 | = | $ 720.72 |
| Sewer FFBC 364 | × | 3.39 | = | 1,233.96 |
| Total Annual FFBC | | | | 1,954.68 |

House Connection Charge:

| | Water | | Sewer | |
|---|---|---|---|---|
| | $52.69 | + | $52.69 | = 105.38 |

| TOTAL ANNUAL CHARGE | $2,060.06 |
|---|---|

The appellees were further informed that this sum would be due annually for 23 years for a total charge of $47,381.38.

The appellees protested this proposed assessment, claiming that their lot is irregularly shaped, rather than normally

shaped, and thereby should have been assessed based on the front footage assessments of normally shaped neighboring properties, in accordance with Article 29, § 5–102(a)(i).[1] A hearing was held on May 11, 1983 before Andrew M. Vislasky, Chairman of the WSSC. The WSSC there waived its right to produce evidence as to how it decided the appellees' lot was "normal" in shape. After considering the appellees' arguments, the hearing officer recommended to the WSSC that the assessment remain unchanged and on June 1, 1983 this recommendation was approved.

The appellees then filed a Bill of Complaint for Injunction in the Circuit Court for Prince George's County, seeking to prevent the WSSC from enforcing the assessment. A hearing was conducted on December 20, 1983 before Judge Audrey E. Melbourne. The appellees' argument at trial was two-fold:

1) Their lot, Lot No. 44, is irregularly shaped and, therefore, the WSSC's decision that the lot is of normal configuration was arbitrary and capricious, unjust and illegal; and

2) The assessment is excessive in that Lot No. 44 is not benefitted by the water and sewer services to an extent substantially equal to the amount of the assessment, and, therefore, the assessment constitutes a taking of their property for public use without compensation and deprives them of their property without due process of law in violation of Article 24 of the Maryland Declaration of Rights and the 14th Amendment to the Constitution of the United States.

The evidence offered at trial discloses that the appellees' lot is one of fourteen lots situated on Plat 3 of the Pleasant Prospect subdivision. With the exception of the corner lots,

---

1. That section provides that irregularly shaped lots are to be assessed "for the frontage that the WSSC determines to be reasonable and fair ..." In accordance with the procedures set forth in its Assessment Manual, the WSSC assesses irregularly shaped lots based on the assessments of neighboring lots which have been classified as "normal." See our discussion of these procedures, *infra*.

No. 45 and No. 48, the majority of lots were assessed for the actual amount of footage abutting Prospect Drive, under the standard "front-foot" rule. Lots No. 38 and No. 51, however, were classified by the WSSC as irregularly shaped, owing to their narrow front footage (67 feet and 48 feet, respectively). These properties were each assessed by the WSSC at 188 feet[2] pursuant to § 5–102(a)(i), *supra*.

The WSSC uses an Assessment Manual in calculating benefit assessments. In that manual, "normal" shaped lots are defined as "basically square or rectangular." Irregularly shaped lots are not specifically defined, but one can conclude that all lots which are not basically square or rectangular are intended to be so designated. According to the manual, irregular lots "are assessed based on the front footage assessments of normal shaped neighboring properties." Corner lots are assessed on only one street front and, in most instances, the frontage selected is that to which the house would normally face.

After considering the appellees' contentions in light of the evidence presented, the trial judge issued her July 11, 1984 memorandum and order which stated:

It is the holding of this Court that the front-foot benefit rule is not a fair and reasonable method of measuring benefits when, as here, the lot assessed is approximately the same size as its neighboring lots yet, due to its irregular shape, its frontage is much longer than that of the neighboring lots. Applying the front-foot benefit rule under these circumstances takes private property for public use without compensation, and deprives the owner of his property without due process of law.

The plaintiffs' property was not benefitted by the water and sewer facilities to an extent substantially equal to the assessment of $47,381.38. This being the case, the assessment violates Article 23 [sic 24] of the Maryland Declaration of Rights and the Fourteenth Amendment to

---

2. This represents an approximate average of the front footage of lots in the subdivision excluding the "corner" lots numbered 45 and 48.

the Constitution of the United States. Since equitable relief may be granted upon a finding that the Commission's actions were unconstitutional, it is unnecessary to consider the plaintiffs' contention that the Commission's actions were also arbitrary and capricious.

The trial judge ordered that the WSSC be permanently enjoined from enforcing its assessment on the appellees' property, and that the case be remanded to the WSSC for an assessment of their property consistent with the trial court's findings and with the above cited constitutional provisions. From that order the WSSC has appealed.

■ It is well settled that the legislature may either directly or by delegation to a municipal authority require that the cost of a public improvement be assessed against property benefitted thereby. *French v. Barber Asphalt Paving Co.*, 181 U.S. 324, 21 S.Ct. 625, 45 L.Ed. 879 (1901); *Lyon v. Mayor and Common Council of Hyattsville*, 125 Md. 306, 93 A. 919 (1915). It is equally clear that the construction of water and sewer facilities adjacent to property conveys a special benefit to that property. Indeed, the Maryland Legislature has empowered the WSSC, which initially bears the expense of such construction, to offset its costs by the imposition of a special assessment tax upon the benefitted property owners. The rationale for this taxation was explained by the Court of Appeals in *Leonardo v. County Commissioners*, 214 Md. 287, 134 A.2d 284 *cert. denied*, 355 U.S. 906, 78 S.Ct. 332, 2 L.Ed.2d 260 (1957), *reh. denied*, 355 U.S. 967, 78 S.Ct. 534, 2 L.Ed.2d 543 (1958):

Special assessments are in the nature of a tax upon property levied according to *benefits* conferred on the property. The whole theory of a special assessment is based on the doctrine that the property against which it is levied derives some special benefit from the improvement. The justice of demanding the special contribution is supposed to be evident in the fact that the persons who are to make it, while they are made to bear the cost of a public work, are at the same time to suffer no substantial

pecuniary loss thereby; their property being increased in value by the expenditure to an amount substantially equal to the sum they are required to pay. 14 *McQuillen, Municipal Corporations*, secs. 38.01, 38.31, (3rd Ed.). This Court has recognized the validity of such assessments on many occasions. The mode of assessment is a legislative question, subject to constitutional limitations. The mode may be committed to municipal authorities and the general rule is that the exercise of their discretion therein, if made according to a definite and just plan, will not be reviewed by the courts where neither fraud nor mistake appears. *McQuillen, op. cit.*, sec. 38.111.

*Id.*, 214 Md. at 307, 134 A.2d 284.

The legislature prescribed the method by which the WSSC can assess benefit charges to property owners in Article 29, § 5–101, *supra*. The pertinent provisions of that section are set forth below:

§ 5–101. Generally.

(a) *Declaration of benefit.*—The construction or acquisition of water mains or sewers is a benefit to all property that abuts on water mains or sewers.

(b) *Classification of Properties.*— ... the WSSC shall divide all property that abuts ... into the following classes:

.    .    .    .    .

(iv) Subdivision residential;

(2) The classification of any property by the WSSC is final, subject only to revision at a hearing.

.    .    .    .    .

(e) *Basis of benefit charge.*—The benefit charge ... shall be based for each class of property on:

(1) The approximate cost of the construction ...; and

(2)(i) The number of front feet abutting on the street ...;

(f) *Requirements for benefit charge.*—The benefit charge:

(1) ... shall be uniform for each class ...

Subsection (e)(2)(i) authorizes the WSSC to employ the front-foot rule as the means of ascertaining the appropriate apportionment of improvement costs. · The Supreme Court has given its judicial imprimatur to the use of the front-foot rule, where appropriate, as one method of apportioning the cost of public improvements. *See French v. Barber Asphalt Co., supra; Tonawanda v. Lyon,* 181 U.S. 389, 21 S.Ct. 609, 45 L.Ed. 908 (1901). Likewise, the Maryland Court of Appeals has recognized the utility of the front-foot rule "as a convenient substitute for the estimate of benefits conferred, especially where the nature of the property involved 'makes it a reasonable method without causing injustice through inequalities.' " *Montgomery County v. Schultze,* 302 Md. 481, 489 A.2d 16 (1985) (citations omitted). The Supreme Court has repeatedly emphasized, however, that if an assessment as made is palpably arbitrary or unreasonably discriminatory, then that assessment is violative of the due process and equal protection clauses of the Fourteenth Amendment, and will not be upheld. *Road Imp. Dist. v. Mo. Pac. Ry. Co.,* 274 U.S. 188, 194, 47 S.Ct. 563, 565, 71 L.Ed. 992 (1927); *Kansas City Southern Ry. v. Road Imp. Dist. No. 6,* 256 U.S. 658, 661, 41 S.Ct. 604, 605, 65 L.Ed. 1151 (1921); *Gast Realty & Inv. Co. v. Schneider Granite Co.,* 240 U.S. 55, 58, 36 S.Ct. 254, 254, 60 L.Ed. 523 (1916); *Houck v. Little River District,* 239 U.S. 254, 262, 36 S.Ct. 58, 60, 60 L.Ed. 266 (1915).

■ The Court of Appeals in *Harlan v. Bel Air,* 178 Md. 260, 13 A.2d 370 (1940) reiterated the prevailing law when it observed at pages 267–68, 13 A.2d 370:

It is apparent that a levy of assessments by frontage, as a convenient substitute for estimates of benefits conferred, is fair when applied to cities and large towns, where the small size of the lots usually makes it a reasonable method without causing injustice through inequalities. However, the front foot rule should never be employed when it can not be a fair standard by which to measure benefits. Accordingly, assessments by the front foot rule have been held unconstitutional when applied to

rural lands, whether outside or inside the corporate limits of a city or town. *Seely v. Pittsburgh* 82 Pa. 360 [ (1876) ]. *If a front foot assessment is obviously unjust and confiscatory, it violates Article 23* [3] *of the Maryland Declaration of Rights and the Fourteenth Amendment to the Constitution of the United States.* It has been distinctly held that *an assessment for improvements takes private property for public use without compensation, and deprives the owner of his property without due process of law, if the property is not benefited by the improvements to an extent substantially equal to the amount of the assessment;* and in such a case the aid of a court of equity can be invoked to prevent injustice. *White v. City of Tacoma* (C.C. [1901] ), 109 Fed. 32; 25 *R.C.L., Special or Local Assessments,* sec. 65; 44 *C.J., Municipal Corporations,* sec. 3116.

(emphasis added). *Harlan* reminds us that where the use of the front-foot rule leads to unjust and confiscatory results, a different method must be used by the assessing authority to measure the benefit. The legislature, anticipating such a circumstance, provided the WSSC with an alternative process for assessing property in those cases where the use of the front-foot rule would be unfair. This statutory alternative is embodied in Article 29, § 5–102, which reads in part:

(a) *Assessments.*—(1) In classifying property and levying the foot benefit charge, the WSSC:

(1) Shall assess any irregularly shaped lot that abuts on a road, street, lane, ... for the frontage that the WSSC determines to be reasonable and fair; [4]

---

**3.** Now renumbered as Article 24 of the *Maryland Declaration of Rights.* *See* Ch. 681, § 1 of the Acts of 1977.

**4.** As mentioned *supra,* the WSSC has determined that a fair and reasonable assessment of such irregular lots is one which is based upon neighboring normal lots. We are not here called upon to review generally this or any other aspect of the WSSC's assessment policy and since we deem it unnecessary for purposes of this opinion will, therefore, refrain from doing so.

██ The question before us is not the validity of the statutory grant of authority to the WSSC to assess abutting property the costs of water and sewer construction, nor is the appropriateness of the front-foot rule as a means of apportioning the costs here challenged. Rather, the gravamen of the appellees' complaint is that the use of the front-foot rule, *as applied to their property*, constitutes a taking of their property for public use without just compensation and deprives them of their property without due process of law. We agree with the trial court that, in this case, application of the front-foot rule produces an unconstitutional result. The WSSC's assessment of the appellees' property cannot, therefore, be upheld.

As indicated above, lots No. 38 through No. 51 on Plat 3 are all part of the same residential plan, and it is reasonable to say that all of these lots derive the identical benefits from the water and sewer facilities installed by the WSSC. Further, it is undisputed that each property owner is responsible for his share of the cost in proportion to the corresponding benefit received. It follows that each property owner, having received the same benefit as his neighbors, should be burdened with an assessment comparable to those paid by his neighbors. An assessment far in excess of those levied against similarly benefited properties is a *prima facie* indicium of a disproportionate assessment.

In the appellees' case the assessment levied against their property is nearly twice that of the majority of neighboring properties. This inequity occurred because, while the size of the appellees' lot is not substantially larger than the other lots in the subdivision, and indeed is smaller than many, its configuration is such that its frontage of 364 feet is approximately double that of the average footage of the remaining lots. To assess the appellees' lot to its actual frontage in accordance with the front-foot rule constitutes a gross overcharge that is disproportionate to the benefit received, and thereby creates a constitutional infirmity. In this case, the infirmity can be avoided if the front-foot rule is abandoned in favor of an assessment method which

results in the apportionment of costs not disproportionate to the benefit received.[5] We agree with the trial judge that this case must be remanded to the WSSC for the imposition of an assessment upon the appellees' property consistent with the trial court's findings of fact and within the range of constitutionally acceptable assessments. In affirming the order below, we reiterate the Court of Appeals' dictate in *Harlan, supra,* to wit:

> [A]n assessment for improvements takes private property for public use without compensation, and deprives the owner of his property without due process of law, if the property is not benefitted by the improvements to an extent substantially equal to the amount of the assessment; and in such a case the aid of a court of equity can be invoked to prevent injustice.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY THE APPELLANT.

---

5.  We note that here, the WSSC could have calculated a more appropriate assessment by classifying the appellees' lot as irregularly shaped, thereby causing the appellees' lot to be assessed in an amount comparable to its neighbors.